The next case today, number 231626, Sandra Rodriguez-Cotto et al. v. Jennifer A. Gonzalez-Colon et al. Will counsel for appellants please come up and introduce yourself on the record to begin. We have opposing counsel from the first case as co-counsel in the second case. Yes, you are. That's why we have a very unique bar here in Puerto Rico. It's good to know all counsel get along together. Okay. For the record, Your Honor, Francisco Gonzalez-Magado presenting appellants in the case of bar. We would request four minutes for rebuttal. Okay. And are you going to divide the time with co-counsel or are you going to be arguing? He's not co-counsel in the case. Oh, you were there. Okay. But we do get along very well. I can see that. Okay. Okay. So four minutes for rebuttal. Let's begin. Your Honor, the case of bar is about the constitutionality of Article 514 of Law 20. Now, in pertinent part, and I start off with the proper text of the law because that is the proper place to start the discussion. This law states that any person, and I'm paraphrasing here, but I'm paraphrasing from the text of the law. Any person, natural or legal, knowingly or recklessly, after the governor of Puerto Rico has decreed by executive order an emergency or disaster, shall be punished with imprisonment of not exceeding six months or a fine not exceeding $5,000 or both, if they give a warning or false alarm, knowing that the information is false in relation to the imminent occurrence of a catastrophe in Puerto Rico or disseminates, publishes, transmits, transfers, or circulates through any means of communication, including the media, social network, or any other means of dissemination, a notice or a false alarm, knowing that the information is false, when as a result of its conduct it puts the life, health, bodily integrity, or safety of one or more persons at imminent risk or endangers public or private property. Now, originally, Law 20 had a different language. It didn't call for knowingly false or recklessly disregard for the veracity of a statement, but that was amended by Law 66. Can I ask you a question about, a couple of questions about the scope of this law? In the introductory phrase, we have the knowingly or recklessly. Yes. Yet in the substantive prohibitions, it has to be knowing falsity. Yes. What work does the word recklessly do in this statute? Well, I think it modifies the scope to include information that should have been known that it was false or the party that is accused of violation. But the substantive prohibition says knowing, and we're dealing with subject matter where everybody knows there's a difference between knowledge and reckless disregard for the truth, right? Mm-hmm. And so I'm confused about the role of the word recklessly given the very specific requirement of knowing falsity in both of the substantive prohibitions. I agree, Your Honor, that the part A of Article 514 specifically states that it has to be knowing. So that is an issue that would be raised by anybody who's... Well, can you recklessly give a warning that is knowingly false? Sure, because you are recklessly ignoring the possibility that that notice or warning will cause an imminent harm or an imminent risk to the citizenry at large. And at the end of the day, that is what the law is pursuing. Is that what recklessly modifies here? Well, I would believe it is, Your Honor. How do you get that out of the language? Well, because knowingly or recklessly after the governor of Puerto Rico has decreed the executive order, an emergency or disaster. Now, the way you interpret the law is you have to look for an interpretation that gives harmony to both sections of the law. Now, in this case, the main reason why the law was approved was to stop knowingly false information from being spread by parties during a time of emergency. Now, it's important to highlight that this only applies during a time of declared emergency. Now, that means that the governor of Puerto Rico has to issue an executive order declaring a state of emergency. If that decree is issued and a party acts recklessly towards that decree and by doing so transmits knowingly false information, then they would be in violation of this law. Reckless of what? Reckless of the effects that their actions may have. Okay, and that's where I have... Even if there's no harm? Even if there's no harm, there's a crime by making the reckless statement, correct? If it is knowingly false, yes. Okay. Okay. Can I also ask you, how does this statute apply to a prediction or to an opinion? It wouldn't apply to a prediction or an opinion because the statute requires that the statement be knowingly false. Okay, that's good. The statute does not ask to prohibit false information generally. Mistakes are natural or even, you know, just... What if, let's assume the other day the aqueduct, the tube here burst and there was an issue and nobody had water. The governor didn't have a state of emergency, but let's assume she did. And let's assume somebody on the media, a humorist or something, starts doing like what Orson Welles did in War of the Worlds almost a century ago and basically says it's King Kong versus Godzilla, you know, destroying and they're coming to destroy all, you know. That's knowingly false. Would that person get prosecuted for doing that on TV after the governor has, you know, declared an emergency? I think... It's certainly a reckless, knowingly false statement. I think, and the problem here is hypotheticals are problematic because it has to be a very case-specific situation. And in this case, the person investigating the issue or the prosecutors who would decide whether to pursue the case would make the determination based on the issues because following your example, Your Honor, I'm sorry, but following your example, if it's a reference to King Kong or Godzilla, I would posit that there is very little chance that that would create an imminent risk because it's unbelievable. What if the Venezuelans have invaded us? Then if that is... There'd probably be a lot of panic out there. If there is evidence that that person knew that that was not true and there was an emergency declaration in place issued by the governor through an executive order, then yes, that person could be in violation of this act. Can I take you to the doc, how you think doctrinally we analyze this? So is it your position that this statute is outside the First Amendment because there is an exception to the First Amendment for knowingly false statements? Is that your position? Our position is, as the Supreme Court stated in Garrison, yes, that knowingly false statements do not enjoy First Amendment protections, not when they are knowingly false. And again, this is a decision that has to be made. False statements enjoy all the protection of the First Amendment, but knowingly false statements, and there's historical reasons for this, they do not contribute to the discussion, to the exchange of ideas as speech should. So you would put this statute in the same, I mean, not the exact same buckets, but the same analytical framework as obscenity, fighting words, incitement, those things that historically we have said are not protected by the First Amendment. Your position is this statute falls on that side of the line. Our position is that it falls on the side of the line that does not enjoy First Amendment protection pursuant to Garrison and pursuant to Freeze, which was given by this court. You say those create a rule. But not necessarily the same framework as fighting words or other, because there are specific frameworks for determining whether those. The bottom line is we don't get to the question in your analysis of whether this law is content-based or not. We don't reach that because it's just not protected by the First Amendment. Our brief states, our position is three-pronged. The first is that pursuant to Garrison by the Supreme Court and pursuant to Freeze by this court, this law is constitutional because it follows the same framework. It follows the same standard. If this honorable court were to determine that it needed to enter into whether content-based, our position is that it is not content-based. Let's say I disagree with you about Garrison. Okay. And now we're into is this content-based. You say it's not content-based? It is not. How is it not content-based? Because for it to be content-based, a statement has to be judged on the substance of the statement itself. And here, and I'm sorry, I didn't mean to interrupt, but going back to Judge Helpe's example earlier today, the first example was Godzilla and King Kong, but the second example was an invasion, King Kong and Godzilla, but the second example was an invasion from Venezuela. And it's not content-based because theoretically, even though I don't agree with the King Kong or Godzilla, but the content can't be that varied and still fall under this law. The first sentence gives a warning, knowing it's false, related to an imminent occurrence. If I'm going to judge whether someone's guilty of that, do I have to determine whether their statement is about an imminent occurrence? No, you don't, Your Honor. Because the statement doesn't have to be about an imminent occurrence specifically. It has to have the effect of causing — A false warning in relation to the imminent occurrence of a catastrophe in Puerto Rico. In relation to. Yes. So the statement has to be in relation to an imminent catastrophe. Yes, Your Honor. Doesn't that require me to look at the statement and make a decision? Is that about an imminent catastrophe or is that about something else? Not necessarily, again, because the content can be very varied. The content can be anything. The effect the statement has has to have a relation to an imminent risk or an imminent catastrophe. The content can be anything from food supply or invasion from Venezuela or a hurricane or an earthquake or even, as I pointed out in my brief, it can be even an alien invasion. But the effect has to be related to. If I say the food at the restaurant is bad, don't eat there. That's a warning. Don't eat at the restaurant. But that's not in relation to an imminent occurrence of a catastrophe in Puerto Rico. On the other hand, if there's a hurricane coming that's going to destroy the island, that is in relation. Now, the first one would not be covered by the statute. The second one would. What's the difference between the first and the second? The content of the statement. One's about a catastrophe. One is not. I would posit, Your Honor, if I'm allowed, that the difference is the effect the statement has. In the first example that you mentioned, the statement was about the food quality in one specific restaurant. Now, if you change that same statement to apply to 1,000 or 10,000 restaurants during a time of emergency, it does have the effect of creating a situation where there's an imminent risk to the citizenry. And it does relate to a possible catastrophe. But, again, this all has to happen in the context of a decreed state of emergency. Counsel. Counsel, if I could ask you, you've just raised a question about danger and risk. The district judge and the briefs all seem to assume that the concluding phrase here about when, as a result of its conduct, it puts the life, health, bodily integrity, or safety of one or more persons at imminent risk or endangers public or private property. Everybody seems to assume that applies only to the second knowing falsity clause. Is that necessarily correct? You seem to be saying here that those dangers and risks as effects also apply to the warning or false alarm. Do you agree with that? Your Honor, I believe there are two instances where this law can be applied. The first one is, and I believe there are separate instances. I don't believe that the second part applies necessarily to the first. Well, you were just arguing that it did. You were just arguing that in response to Judge Aframe's question, that his hypothetical would be distinguishable based on the extent of the risk. Because if it met that second instance, then it would definitely be applied to the first. The law would apply here. There are different instances because one of them has to be in relation to the imminent occurrence of a catastrophe in Puerto Rico. The second one is that it creates or. The word or in the middle of the paragraph distinguishes between the two instances. But there is a relation. But it is not clear to me that the effects clause does not apply to both. It seems to me that it would. Or at least your argument for constitutionality is a lot stronger if there's some form of requirement of risk or danger. And I believe there is some sort of requirement. I don't believe that it's the same requirement for both. But I believe there is a relation. I mean, there is. They are tied together in the sense that under the circumstances of a decreed state of emergency. To give false warnings about an imminent. Is necessarily dangerous. It would be necessarily dangerous. And at the end of the day, what this law is pursuing is to protect the citizenry. By ensuring that only true or not knowingly false statements are dispersed, are diffused during a time of emergency. Let me ask you about a situation that concerns me greatly about this law. Let's shift away from hurricanes and invasions to pandemics. There are states in the United States where the state government takes the position that vaccines are dangerous and unproven. Could a state government in that situation prosecute someone who argues in favor of vaccine use because they are safe and well proven? The position of a government does not necessarily mean that that is scientific truth. And this is not a philosophical. But the government has the power to prosecute. The government has the power to file charges against people for any number of reasons. Now the question is whether those cases will be successful when they are presented to a judge. And the judge has to apply the law. That's not the question. Because there is a chilling effect that laws like that work. So a question of a state of emergency around a pandemic where the question is vaccine safety. If a government wants a certain view on that and it threatens to prosecute, that has a chilling effect on an important contribution to the marketplace of ideas about vaccine safety. And this would cover that, wouldn't it? I don't believe it would, Your Honor, because, again, the standard here is knowingly false. Not whether it is agreeable to the government. In Alvarez, Justice Breyer goes at length to say mens rea are important, but they don't cover the field because these falsity laws can still get to political topics. And to the extent the government holds that as a sort of Damocles over people's heads, don't talk about that because we might prosecute you. That's an important problem. And as to the first prong of this statute, I don't understand why that wouldn't be covered. A false warning about an imminent occurrence of a catastrophe in Puerto Rico, take it to be COVID and you don't say don't wear masks. That's a terrible idea. Masks are unsafe. And the government doesn't want me to say that. Couldn't I be I could be potentially prosecuted on that. That's a false statement, even though it relates to a political thing that people are talking about. I don't believe that would fall under the under this law and that you could be prosecuted for that. Because, again, the standard is not whether the government agrees or whether that statement goes with the government's position or stated position. The standard is knowingly false. We really need to nail you down before you sit down on Judge Hamilton's question, because otherwise I don't think I'll be able to work through this case. This first prong of the statute, which says gives a warning in relation to an imminent occurrence of a catastrophe in Puerto Rico. Is it your position that if someone gives a warning, knowing it's false, that the hurricane is offshore? And I say that and I know it's false. I can be prosecuted hard stop if there is a state of emergency decreed by the governor. Yes. OK. And it's knowingly false. Correct. But I don't. But the prosecutor would not need to show that my comments put the life, health, integrity or safety of one or more person at imminent risk. Not necessarily, but I would be hard pressed to imagine a situation where if you infringe on the first part of the paragraph, you don't you wouldn't infringe on the second one. I'm asking what does have to be proven? All that has to be proven for a conviction under what I'm going to call the first clause is a warning, knowing that's false, that's about the imminent occurrence of a catastrophe. Hard stuff. That's that's enough for prosecution under this law. If there is a state and a declared state of emergency. On the other hand, if I disseminate, which might not be my own statement, it might be someone else's statement. But I still know it's false. Then the prosecutor also has to prove the connection to life, health, safety. That's your position. Yes. And it is not. There's no requirement of that second prong that the defendant need know that his conduct will cause the risk to life, health and safety. There's no mens rea as to the second requirement under the second clause. Not your honor. Our position is no. But they will still need to prove that there is a statement, a warning that is knowingly false, given, and that it was done during a time of the declared emergency. Yes. If I if I could go ahead, ask one more question here. Sorry, I've got my my questions on too many pieces of paper here. But the district court was particularly concerned about the government's failure to put on evidence. That government counter speech is not a sufficient response to or remedy for false information. Could you address the absence of that evidence, which was of such concern to the district court? Do you mean in the context of one of the ways this is applying the Alvarez standard under whether we're talking about. Whether a less or intermediate scrutiny, one of the questions has to do with alternative means of serving the same government purpose. Yes. The problem with that, your honor, is during a state of emergency. Counter speech is not an effective or quick enough way. Oh, you have said that a district judge said there's no evidence of that. And I'm asking for the difference between what one of my colleagues at home in Chicago likes to call lawyer talk versus evidence. Well, no evidence was submitted at the district level, but that doesn't mean this is not an issue that requires evidence. This is an issue that, you know, it's just some of these executive orders, as I understand, last for years. How long did the covid executive order last in Puerto Rico? It lasted around two years last. So for two years, then there would be this. The executive order being placed, this law would be triggered. And so for some emergencies or whatever executive orders, it strikes me that counter speech would very much be on the table. Maybe for others, it wouldn't. Which brings me to another question. The executive order doesn't necessarily need to trigger need to be connected to the imminent catastrophe, does it? You could have the covid executive order and I make a false statement about a hurricane and I'm covered. Right. The law makes no distinction on that from its text, but I would posit that there would have to be a relationship in order for it. Because to meet the standard for it to be an imminent occurrence of a catastrophe in Puerto Rico, the catastrophe has to be viable. The catastrophe has to be something that is possible for Puerto Ricans to to face. And in the context of a covid declaration without any news or without any coverage, without any information that a hurricane might be near, it's just not a viable warning that that would provoke the triggering of the law. These are why the statute, to me, is striking me as quite overbroad. So on the one hand, you're saying the executive order is what triggers the prohibitions in the law. That's the triggering fact. That is the circumstances under under which the law would be true. You're telling me, for example, the covid executive order lasted for years. And yes. And so for years, these prohibitions would have been in place. Sure. There is no connection, at least I don't see it, between the executive order and the thing that you're talking about. That's not a requirement of the statute. So the executive orders about covid. I'm lying about a hurricane. I can be prosecuted. I would posit that there is your honor, because to meet the standard of presenting an imminent occurrence of a catastrophe in Puerto Rico, this has to be viewed in the right context. And in the context of covid, a warning about a nonexistent hurricane that nobody has ever heard of and might even occur during the time, during the hurricane season, that would not be enough to meet the standard for an imminent occurrence and imminent risk. That makes good sense to me if I were writing this law as a legislator. But I don't get that from the text of the actual statute that's been enacted. That's my problem with this. I believe it is. You can take it. You can get it from the text, your honor, because, again, these things don't happen in a vacuum. And judges have to see this case when it's presented to them and they have to know that the standard is being met. So all you're telling me is, well, a prosecutor wouldn't do that. Just take my word for it. A prosecutor wouldn't prosecute a lie about a hurricane based on an executive order about covid. That's what you're telling me. I'm telling I'm not asking you to take my word for it. I'm saying that for the case to be able to be successful and for a prosecutor to believe that the case will be successful, they have to know that the evidence meets the standards set forth in the law. And the standard says that the warning has to be in relation to the imminent occurrence of a catastrophe in Puerto Rico. In order to meet that standard, the context has to be there. I cannot claim. Is every weather event in Puerto Rico that might cause a flood to have an executive order of an emergency that precedes it? No, it actually doesn't. It might come afterward and it might be limited to certain towns specific and not Puerto Rico. Right. So, again, the executive order is about something else. Sure. But I lie about a weather event that's about to happen. There's going to be an imminent catastrophe. The executive order is not about that. I've still breached the statute. If you meet the standard that it does present an imminent that it does, it is in relation to the imminent occurrence of a catastrophe in Puerto Rico. But for that, the context has to be there. And if the context of the declaration of emergency is COVID, and we're talking about a storm that is not there, that nobody knows is there, that hasn't been reported to be there, then I don't see how that will create an imminent catastrophe. It's in relation to an imminent catastrophe. The prosecutor could read the statute differently and let's say let's prosecute. Because you're not – you've got different prosecutors. You do have these prosecutors and they do have their discretion, but they still need to believe that the case will be successful. Take it in reverse. The state of emergency is about the hurricane. But now I'm a prosecutor who has certain views about a pandemic and vaccines, and now I'm going to take this statute because I have a hurricane executive order in place, and I'm going to start prosecuting people who say don't use masks, don't get vaccinated. I'm going to prosecute those people because I think they're causing an imminent catastrophe because they're going to spread this disease around the island. I could, couldn't I? I don't think that would be successful under the law, Your Honor, because again, the context of the declaration of emergency will be the hurricane. I would be hard-pressed to believe how an issue concerning masks or vaccination would present, would be related to the imminent risk of a catastrophe when the catastrophe that we're being referenced to is a hurricane. Again, you need to meet the standard of the law, and if the circumstances are not there, then they're just not there. I think I have one last question, if you will. For now. For now. I'm not guaranteeing this. But, Counselor, could you just tell us what prompted this law? Were there particular episodes or examples that led to this? Well, the record is not clear on what prompted it other than the state compelling interest that's behind it, and that is to ensure that true information is being given to the citizenry during times of emergency. I can tell you that during Hurricane Maria here in Puerto Rico during 2017, communication was limited. For the first couple of days, we had no cell phones. For the first couple of days, very few TV or radio stations were working. There was no electricity, so even if they were working, you had problems charging your phones or your radios or anything like that. A lot of the information spread was through social media. I can tell you from my personal experience is a lot of the information I got during those first days following Hurricane Maria was through social media, particularly friends of mine that lived out of Puerto Rico who had actually more information than I did because the news there were more complete and they were steady. So one of the things that this law is trying to pursue is that during these times of crisis, when we already lived in Puerto Rico, a time where information was hard to get, the information that you actually got was true, or at least not knowingly false. Don't we know, for example, that one of the plaintiffs was publishing information about deaths caused by Hurricane Maria that was much more accurate than what the government was putting out? At that time, the government was putting out a number and later studies showed that there was a much higher number and that was more consistent with Rodriguez-Cotto's position. In that case, this law would not apply because, again, knowingly false is not a standard that's easy to meet. She can be charged criminally. Maybe in court she will prove I was right, but then you're putting the onus on her. Isn't that the case? But that's the case in every criminal prosecution case that's presented to the courts. I mean, the first bar is the police agent, and they have to see if there is actually a law that's being violated. They submit it to a prosecutor. The prosecutor then reviews the record and reviews the file and reviews the law and then determines whether there is a basis here to submit a case, and then the judge has to see it. So there are different levels of scrutiny applied. Can I ask one more question before you sit down? I have two more questions. When Justice Breyer, using the intermediate scrutiny, he says mens rea is not enough. It needs to be mens rea plus something else for these kind of falsely laws to survive. And I'm looking at the so if you're going to think about the statute in that way, especially Clause 2 where you have the harm requirement, maybe that works. But my question is do you agree that there's no quantum of safety or bodily integrity or endangerment to public health or private property required by the statute? You already told me it doesn't require mens rea, so the defendant doesn't need to know of the danger. And what I'm worried about here is there's no quantum of risk that's required. So any risk, no matter how small, would still fit within the statute. Do you agree with that? Well, first of all, with all due respect, I do believe there is an element of mens rea with requiring that the person knowingly knows that the information given is false. I understand. So let's just be clear. Let's be clear. You agree and I agree. That mens rea is there. And I asked you earlier in this argument, does that mens rea then apply to the risk part of the statute? And you said no, and I think you're still saying no. No, but they do have to know knowingly give false. I agree. Now we're getting to that risk part. And in addition to it not having a mens rea, I'm asking you a different question, which is I don't see a quantum of risk that's required. Do you agree that there's no requirement in that statute of a quantum of risk? There is no quantum of risk given, Your Honor, but we do not believe that one is needed. For example, when you compare this section, the language of this law with the ‑‑ and I want to be clear I have the correct language here. When you compare this language with the model, if you'll allow me. That requires the person know of the risk. Actually, Your Honor, with the model, I'm trying to find the correct language here. Give me a second here. You're going to have some rebuttal time, so if you can find that when opposing counsel. I have it here. Oh, you have it. Okay. Section 250.3 of the American Law Institute's model penal code. Yes. Now that states that a person is guilty of misdemeanor if he initiates or circulates a report or warning of an impending bombing or other crime or catastrophe, knowing that the report or warning is false or baseless, and that it is likely to cause evacuation of a building, place of assembly, or facility of public transport, or to cause public inconvenience or alarm. And the knowing there seems to apply to that. Sure. But I want to make reference specifically to the last part of the language where it states or to cause public inconvenience or alarm. There is no quantum given there either. So here's my problem with the statute. Maybe if the knowing bled over into knowledge of the risk, that might be a cure, or maybe if the quantum of injury is super high, that might be a cure. But the problem with your statute is there's no mens rea as to the risk, and the risk could be de minimis. And when you combine those two things together, I start to wonder if this statute is infirm. And my response to that would be we believe that it's not the case, and we make reference to the American Law Institute's model penal code, which follows the same type of structure and the same type of language. There is no quantum there, and there is no mens rea as to the effect that it may have. It states that it is likely to cause evacuation of a building, a place or assembly, or a facility of public transport, or to cause public inconvenience or alarm. There is no mens rea. In that statute, do you read the word knowing, knowing that the report is false or baseless and that it is likely to cause public inconvenience or alarm, that the knowing runs across to all of those elements? Yes, I see that. And I also want to point out that there is no quantum there either. Two questions, hopefully quicker. Let's assume the governor signs. Well, right now, let's assume there's no executive order. So if there's no executive order, I can provide knowingly false statements. That's not an issue. You agree with that, correct? Sure. Okay. What if the governor right now were to issue an executive order, and her communications deputy takes maybe half hour, 45 minutes to get that through the media so everybody knows, but the governor has already signed the executive order, and I provide a false statement? Would that be knowingly false statement? That would be covered by the statute, even though nobody knows the governor has signed the executive order yet? If the executive order has been signed, I believe so, yes. Okay. The other question is, let's assume we hold that the statute is constant. And if you'll excuse me, Your Honor, it's important to know these executive orders are not signed again. This doesn't happen in a vacuum. Circumstances have to be present for the governor to sign an executive order declaring a state of emergency. So even if they don't know that the order has been signed, the citizenry at large is aware that there's a situation going. I mean, by the time the governor, for example, in the hurricane, by the time the governor signs a declaration of emergency, we know about the hurricane. The governor could say, let me wait three, four more extra hours. Let me wait until tomorrow. And that's sort of what happened when the pandemic was coming. Like the governor said, I might be issuing an executive order, but it took time, and then eventually she did. But if somebody is not on notice there's an actual executive order signed, what you're saying is if somebody – it has been actually signed, and a minute later before it gets disseminated, somebody provides a knowingly false statement, the person would be liable. I believe so, yes. Under the law, yes, because the law only requires that the executive order be signed. I don't know how to follow up, and then I have one last question. I would simply note that there have been executive declarations of emergencies. I'm not speaking of Puerto Rico, but under other jurisdictions. For example, that Chicago faces insurrection or that Portland faces insurrection, those have been issued by the highest executive authority in the country. When the connection with the actual facts on the ground is tenuous at best. I understand. I'm not asking you to comment. I'm simply noting. I would like to comment.  That is why in this law in particular, the state of emergency that is a determining factor in its application is issued directly by the governor because the governor being here and being in charge of the affairs here in Puerto Rico is better equipped to know what is going on on the ground than the executive authority in Washington, D.C., the president of the United States, who as president may have the power to issue those executive orders, but is not here in Puerto Rico and does not exactly know what's going on on the ground. That's why the law states that the executive order that's the determining factor in the law has to be issued by the governor of Puerto Rico. And I wouldn't believe either the governor of Illinois or Oregon would issue an executive order to that effect. And as I understand it, they haven't. They have not. Let me ask now my final question, and then we'll hear from ACLU. Let's assume we were to hold that the statute is constitutional. My concern then would be, and again, I'm not saying the current governor. It could be about any present or future governor, for example, at some particular point, if he or she does not like certain speech being provided against the government, wouldn't that be an incentive to issue an executive order? And the result would be to chill that type of speech because it's now criminalized. Again, I'm not saying it's happening right now. I'm not saying it will happen. Hopefully it will never happen. But if we were to find the statute is constitutional, isn't that a problem that could be there? And that's something that our framers contemplated would not happen when they enacted the First Amendment. The problem is, again, the law does not require that a statement go against an established policy of the government or a stated position of the government. The standard in the law is knowingly false statements. So, no, I don't believe there is a chilling effect in that sense because the law doesn't allow it. The law does not allow for prosecution of people who are either dissenting or manifesting or expressing opinions that differ from the stated government position. Let's assume it's an election year. It's three months away, two months from the election. It's peak time. The polls are up and down. And there happens to be an emergency, and that is one of the issues the governor has been criticized. The governor, in theory, could issue an executive order that would chill that type of speech. I don't believe that could happen because, again, the law does not allow for that. The law states that only knowingly false statements. Yeah, but let's assume it's a knowingly false statement. And if it is a knowingly false statement, then yes, and it is. It's election time. The governor has an election time. There are false statements all over the place. But let's assume the governor is able to create a public emergency. Then all those knowingly false statements that are allowed on the first amendment would not under the statute. But, again, that's another issue, Your Honor, because that's not under review before this court. That's not within the text of the law, whether a governor can create an emergency or sign and sign an executive order. But it would have a hypothetical effect or possible effect if the law were to institute it. My position on that would be if there is an executive order that is not warranted, there are legal recourses for people to go against those executive orders. Okay, thank you. And I'm going to ask that same question to the ACLU, so answer it at some point. Okay, thank you, Mr. Gonzalez. You have four minutes rebuttal. Thank you, Counsel. Will Attorney for Apley please come up and introduce yourself on the record to begin? Good morning, Your Honor, and may it please the Court. Brian House of the American Civil Liberties Union on behalf of plaintiffs Apley's Sandra Rodriguez Cotto and Raffaele Gonzalez Cotto. I'd like to start by addressing the statutory interpretation issues that the Court has been discussing with my friend across the aisle. I think it's important to note as an initial matter that as a background principle, this Court's power to impose narrowing constructions on state or, in this case, territorial statutes is limited. That's out of respect for federalism and for the separation of powers. And the rule that applies is that this Court can only impose narrowing constructions that are readily apparent from the statute's text. And it's also because this Court's orders are not binding on the Puerto Rico courts. They're not binding precedent. So turning to the face of the statute, first I would note that in the first paragraph, the clause that says any person who shall perform any of the following acts on purpose, knowingly or recklessly after the governor of Puerto Rico is decreed by executive order an emergency or disaster, in that clause knowingly or recklessly modifies after the governor of Puerto Rico has issued an executive order. So I actually disagree with my friend across the aisle. I think if the governor were to issue an executive order and nobody knew that the order had been issued or were reckless as to that fact, they could not be held liable under the statute. But knowingly or recklessly only modifies that clause. It does not modify the rest of the statute. Really? You don't think that I have to knowingly or recklessly give the warning? I don't think so, Your Honor. I think knowingly or recklessly in that clause modifies. If that's written with punctuation, you would put commas, right? Well, I note, Your Honor, that in that first paragraph there is purpose, comma, knowingly or recklessly after the governor has issued an executive order declaring an emergency or disaster, comma, shall be punished. So knowingly or recklessly is isolated to the clause about the governor issuing the executive order. Now, if you give the warning, you do have to know it's false. That's very clear from both clauses of subsection A of the statute. I take it Puerto Rico does not use, at least in the English translations of the law, does not use the Oxford comma? On purpose, knowingly, comma, or recklessly is how I would write that. If you look, Your Honor, it says including the media, comma, social networks, comma, or any other means of dissemination. So there it is using the Oxford comma. So I gather they do use the Oxford comma in their statutes. The harm requirement in the second clause of the statute I also don't think can be transposed into the first clause, as my friend across the aisle recognized. And if you look at the statute, right, in the second clause it says, or disseminates, transmits, transfers, or circulates, et cetera, knowing that the information is false. So that's clear there that when they reinsert that scienter requirement, that these clauses of the statute are only modifying the second clause. Otherwise, there would have been no need to reiterate that they had to know the information is false. So I don't think a harm requirement can be transposed into the first clause. And for that reason, the first clause is obviously fair. But your friend agrees with you. So I guess that's common ground. That is common ground, Your Honor. I think my friend and I actually agree that the statute is incredibly broad, that it covers speech on all manner of topics, whether that's government actions, hurricanes, masking, the effectiveness of vaccines, food poisoning in restaurants, class schedules, or sightings of UFOs. So if you're right about the first prong, the purpose knowing reckless applies only to knowing of the decree, then this statute, you can be convicted for telling a joke that's perceived as a warning? I mean, there's no knowing. Under your reading, I don't have to know it's a warning. Well, so you do have to know that the information is false. And so in that sense, I believe the Supreme Court in Alvarez said that that can be understood not to mean in circumstances where you're clearly intending the speech not to be taken as true. So plays, for example, in Alvarez, they said a knowing falsity requirement would preclude application to dramatic works. And I think it might also preclude application to jokes. If you knew to knowingly communicate a false statement. We could be talking, and I tell you about something, and I don't mean to warn you. I'm just giving you information. But you or 12 jurors think it's a warning. I could be convicted in your reading of the statute? I think you could be convicted under the second clause of the statute, because that does not have a warning requirement. It applies simply to notices. So if in the government's view that that speech results in an imminent risk to life, health, or property of another, whether you foresaw that or not, you could be convicted. And you could be convicted if you say that to one person, they go transmit it to 10 other people. Similarly, if someone says it to you, and then you go transmit that. If you're a reporter and you transmit remarks by the president about the effectiveness of hydroxychloroquine or the non effectiveness of vaccines, you can be convicted under the second clause for transmitting those remarks because the second clause clearly applies to the media, social media and other disseminators of the speech. And I think that goes to show your honor just how dangerous this statute is. Under the first clause, somebody who says there's already a new infectious strain of COVID. They could be convicted or they could at least be prosecuted. They might be convicted by the government if the government disagrees with their speech. The government relies on the fact that you could bring this in a court of law and maybe the judge would ultimately conclude that the information was true. But of course, what we know about public emergencies, as the district court noted in footnote eight of its order, is constantly shifting. The facts on the ground are constantly evolving. And so in the early days of COVID, for example, everybody knew that masks were unnecessary and ineffective. And then in the later days, we all knew that the masks were effective. And that just goes to show the tremendous liability that speakers have under this statute for communicating information to the public. Counsel, could I ask you the it's clear from Alvarez that just a naked criminalization of false statements will not withstand constitutional scrutiny. But the real question here is under what conditions certain false statements or categories of false statements can be prosecuted and punished. And I guess I'm help me put the in a category. Justice Holmes, famous shouting fire in a crowded theater. What is it that makes that unprotected? So I think it's knowingly false speech that foreseeably leads to an imminent risk of harm. And Justice Breyer identified this in his concurrence in Alvarez. He actually specifically referenced false alarm statutes. And he said that those statutes are constitutional because they either require the government to prove that the speech foreseeably led to significant and imminent public harm. Or they were limited very tightly like the federal terrorist hoaxes statute to specific statements that are obviously likely to cause such imminent harm and that do not pose a risk of chilling large. Right. I mean, I'm sorry. But the second where it's not foreseeability is not the element. What Justice Breyer is saying is, well, then it has to be a really obvious and dangerous harm. Right. That's right. Your Honor. The terrorist hoaxes statute merely says communicating knowingly false speech about a terrorist attack where the speech is likely to be believed is sufficient to convict under the statute. And Justice Breyer is saying that speech is so likely to result in imminent harm that the statute does not need to incorporate a separate for separate foreseeability element. But this statute is not nearly so limited. The first clause, as was already discussed, applies to any warning or false alarm about an impending catastrophe. It could apply to hurricanes, little green men, Armageddon, food poisoning, et cetera. And the second clause applies to speech on literally any topic. And this is far broader than any other false alarm statute that we've reviewed. And there's no you agree. There's no you agree with your friend. I assume there's no mens rea for the risk prong part of it. That's correct. Your Honor. And there's no quantum limitation on the risk prong. There's no quantum limitation on the risk prong and there's no quantum limitation on the likelihood. In fact, there is no requirement of likelihood. Actually, the second clause effectively functions as a strict liability statute. If you engage in knowingly false speech on any topic, say you say there there are voting irregularities. Or I think that covid originated from a lab in China and that leads to public unrest. The government can say you've put another person's life, health or property at risk. You're being prosecuted. If someone actually ends up getting hurt as a result of that public unrest, you can be convicted of a felony. Your bottom line position is if you take the which I guess is slightly more favorable to your friend, the Justice Breyer approach. It doesn't fit his description of a permissible false statement statute. That's right, Your Honor. Neither clause fits the the rule that Justice Breyer laid out in Alvarez. Could I ask you about the question of imminence? Yes. The imminence of harm is in many contexts and fire in a crowded theater is one that easily satisfies. What about the pandemic example that we've been worrying about where the harm may not be measured in hours or days? It might be weeks or months longer before, for example, failures, widespread failures to immunize children against the measles actually wind up having the deleterious health effects. Your Honor, Justice Breyer did not say in his Alvarez concurrence that imminence was a necessary component of the statute. I do think it's a very helps. It helps. It helps a lot. Well, I think it's important because it substantially narrows prosecutorial discretion because the prosecutor, of course, will try to construct all sorts of links between the false speech and the resulting harm. And the more time that elapses between when the speech was made and when the harm resulted, the easier it will be for the government to concoct chains of events that might appear to suggest that the false speech caused the harm. But in fact, maybe the false speech didn't. And that's why, for example, the FCC's broadcast hoaxes rule specifically requires that the speech lead to immediate and actual harm. But I think the foreseeability requirement itself can do a lot of this work. Right. If the if there's a requirement that the defendants know that this speech will foreseeably lead to harm, that there's a high likelihood of harm, I think, in the FCC's broadcast hoaxes rule, it's to a near certainty, then perhaps the imminence requirement might be less important. But the really key element is that foreseeability requirement. We also don't have like so the imminence in the risk prong does not apply to endangers public or private property, right? That's right, Your Honor. So if I make let's say I make a false statement, they're polluting. Yeah. And that is, you know, I know that's false. There's no imminent risk, but it very well may, you know, seep into the ground and harm someone's property. And that would be covered many years from now, theoretically. Absolutely, Your Honor. And the felony penalties would still apply in that in that context as well. I didn't need to do that, and I didn't need to intend I didn't need to know of the risk. The risk didn't need to be imminent, and it didn't need to be foreseeable, and it didn't even need to be necessarily that great because endangers doesn't necessarily have a quantum limitation either. Right. There does not even need to be a high likelihood of the risk. But I would also note that under the district court's interpretation of the statute, the phrase in the clause imminent in that in that clause modifies the risk, not the when the risk occurs in relation to the speech. So, for example, someone who says it's safe to go swim in the water. And two days later, that results in someone swimming in the water and there's a shark there. Under the district court's interpretation, that person's life, health or property is at imminent risk as a result of the speech. But the speech did not immediately cause the risk. The government does not does not contest that interpretation of the statute in its briefs, and it's waived that interpretation as an issue. So under the district court's interpretation of the statute, the risk of harm under any quantum that results from the speech can arise at any point. So you're saying, just so it makes sure I understand the hypothetical, there's bad undertow in that water out there or there isn't bad undertow in that water out there, but there is or whatever. That's false. And then three weeks later, someone goes in that water and drowns. You're saying that's that's covered. They don't even need to drown. All they need to do is have their life, health or property at imminent risk. So even if they're totally fine because the statute does not impose an actual harm requirement, but the government says three weeks later someone swam in that undertow, they were at imminent risk to their life. The speech is offensive under the statute. You think the First Amendment requires actual harm? I don't know that the First Amendment requires actual harm, Your Honor. But again, it's it serves when when the court's considering whether the statute is narrowly tailored. It's kind of a balance between the scope of the prohibition. And in this case, the second clause applies to speech on literally any topic. The foreseeability of the harm and the actual harm, all of those things function to cabin prosecutorial discretion and limit shelter protected speech. So if it had an actual harm requirement, it would be more narrowly tailored. The government can replace that with other things. It can replace that with a knowing of a high degree to a high degree of certainty that a risk will result. Maybe then you don't need an actual harm requirement. So Model Penal Code 250.3 does not have an actual harm requirement. But it does require the government to show that the defendant subjectively knew of a high degree of risk of harm. OK. Anything else, Counsel? In closing, Your Honor, I would just say the district court got it exactly right when it recognized that the watchdog function of a free press is never more vital than during times of a large scale crisis. And because this law undermines that critical function, it violates the First Amendment. Thank you. Thank you, Counsel. We'll hear from Mr. Gonzalez. You have four minutes for rebuttal. Can you please reintroduce yourself? For the record again, I'm Francisco Gonzalez Magas, representing appellants. May it please the Court. Trying to address some of the issues raised during a police turn and addressing one of the last questions that was asked first, whether the First Amendment requires actual harm or not, I do not believe that it does require actual harm. And that has been established in garrison by the Supreme Court and freeze during this case. None of those cases, the statute that was being reviewed, required actual harm. And they were both sustained in garrison by the Supreme Court and in freeze by this court. And none of them required actual harm. Now, there was an issue raised by the appellees of whether, you know, if a statement was made and then three weeks later something happened, then that could still be tied to the statement and that person would be responsible and where is the causation chain extended to? The thing is, Your Honor, again, the law does not exist in a vacuum and the law has to be followed and the law states how to apply it. When the law states- Your argument is completely ignores every time you say that. You've said it now many, many times. It's not in a vacuum. But it's the chilling effect of laws like this. Like, that's the part I don't feel like you're grappling with, which is it is a big deal for someone to be prosecuted. Whether they win the case or not, that is a major impediment on someone's existence. And the whole premise of free speech and chilling effect is that we create breathing space so that people don't have to make the choice, should I say that or should I not? Because if I do, I might get prosecuted and I will win probably, but that's a real impediment on my life versus the safest thing to do is say nothing. And the theory is, over time, if everyone says, I'll say nothing, that harms our marketplace of ideas, our democracy, and how we operate as a people. So that's what this is all about and I feel like you don't grapple with that. You just say, well, they might get prosecuted, but they'll win. But that's not a sufficient answer. Well, let me try this, Your Honor. Under that argument, there would be a chilling effect against every law that has been submitted that would ban speech that was made knowingly when it was false. Justice Breyer's opinion is all about that. It's all about taking us through, and that's the most, I think, the most favorable potential standard for you, because I don't agree with your Garrison argument, I don't think. But he goes through a whole bunch of things and says, if it has all these things, then there's counterbalancing, safety issues that you're concerned with. The problem is your statute misses most of those things. The only thing it has is the mens rea about the speech. About making knowingly false. Knowingly make the false statement, which is certainly a thing, but a thing he says is by itself not sufficient. Yes. But, again, you may not agree with Garrison, Your Honor, but that's the standard from the Supreme Court. If you want to get into Garrison. And that's why I need to make reference to it. In the defamation field, though, harm is typically required, right? Civil liability for defamation, and then we have, I'm a little rusty on my defamation law, but per quad and per se defamatory, some kinds of statements we presume harm, right? For civil liability. Yes. But in both Garrison and Fressa, those were not civil statutes concerning defamation. Those were penal statutes concerning defamation. But for the statement to be deemed defamatory, it has to be harmful, right? Well, it has to be untrue. And knowingly false. Regarding the reputation or something untrue regarding the person. Its impact would have to be detrimental to the person, to the person's reputation. But that doesn't mean that there has to actually be harm. Prior to Garrison, prior to Freese, prior to New York Times versus Sullivan, the idea was that defamation was this broad concept, right? On what was a Freese floating, very broad defamation idea. And Garrison says, no, not all speech, only speech that is recklessly or, you know, actual malice as to falsity. So what it was doing was it was actually protecting speech. But here you're using Garrison to say it just creates a rule against falsity, which runs directly into Alvarez. So I don't see how that helps you. Well, again, I don't see how this law in any way works against free speech, truth speech, or even mistaken speech. Those are not the issue here. The issue here is knowingly false statements made during the times of emergency. And when you compare Garrison and you compare Freese, specifically defamation suits, defamation statutes that protect public officials, and you consider the context of the First Amendment, which serves to promote the free exchange of ideas, particularly political speech, particularly speech that is aimed at keeping the government honest, and you compare that context with this case, I do not see how the protection of a public official from defamation suits justifies banning speech, but the protection of truthful information being diffused or exchanged during times of emergency does not warrant that same protection. Okay. Thank you, Counsel. Thank you, Counsel. That concludes arguments in this case.